PARKES v. SEASONGOOD.

(Circuit Court, D. Rhode Island. March 26, 1907.)

No. 2,760.

1. INNKEEPERS—LIABILITY OF GUESTS—WRONGFUL USE OF ROOMS.

A guest occupying rooms in a hotel with his family cannot be held liable to the landlord for permitting a nurse in his employ to remain in such rooms and to be there delivered of an illegitimate child; any scandal arising from the affair, which may have resulted in injury to the land-

lord's business, not being the proximate result of the delivery itself, or of the action of the guest in permitting it in his apartments.

**2. SAME—CAUSING OR PERMITTING NUISANCE.**

A guest of a hotel, who knowingly permits the body of a dead infant to be concealed in the rooms occupied by him, or causes it to be concealed in any other part of the building, and in either case to remain until it becomes offensive to other guests, commits a nuisance, and may be chargeable with liability for damages resulting to the landlord's business; but, unless he actively causes or participates in the concealment in a place not under his control, he is not chargeable with liability unless the act was done by one for whom he is responsible.

**3. MASTER AND SERVANT—EMPLOYMENT CREATING THE RELATION—TRAINED NURSE.**

A trained nurse, performing her usual duties and exercising the skill which is the result of training in that profession, does not come within the definition of a servant, but rather is one who renders personal services to an employer in the pursuit of an independent calling, and the employer is not liable as master for her acts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1210–1216.]

At Law. On demurrer to declaration.

Albert B. Crafts, for plaintiff.
W. W. Moss and Gardner, Pirce & Thornley, for defendant.

BROWN, District Judge. The declaration states, in substance, that the plaintiff kept a summer hotel; that the defendant engaged board and rooms for himself and his wife, and a trained nurse, who was to take care of his wife and who occupied the same room with his wife; that on August 6, 1904, said nurse gave birth to a stillborn, illegitimate child in said room; that on August 1, 1904, the defendant knew of the nurse's condition, and that she was about to be delivered, but did not make the same known to the plaintiff, and knowingly allowed her to be delivered in said room, and knowingly allowed the body of said child to be hidden in a closet opening out of said room, thereby creating offensive odors; that certain beds and bedclothing were ruined; that on August 11, 1904, the defendant knowingly "allowed and caused" the body to be hidden in a closet used by boarders opening out of a hallway, causing odors and a nuisance to the patrons of the hotel; that on August 11th the body was discovered by employés of the plaintiff, and notice given to the authorities; that the facts became public, and were published in newspapers, in consequence whereof patrons left the hotel and intending patrons were kept away; that the plaintiff lost profits, and was put to expense for bed, bedclothes, and disinfecting.

As the defendant urges, the declaration seems to be based upon various theories of wrong. No authority has been presented to show that, in permitting the use of a room for the delivery of a child, the defendant was guilty of violation of duty to the plaintiff. Much stress is laid upon the scandal resulting from the illegitimacy of the child. The delivery of a child in itself, whether it be legitimate or illegitimate in its parentage, is not an unlawful act; and such scandal as may have resulted from the delivery can hardly be attributable to the delivery itself. No authority has been produced which in any degree tends to

show that the defendant was liable either for harboring a pregnant woman or for suffering her to be delivered in apartments hired by him. While it is not improbable that an occurrence of this kind may have been regarded by guests as a sufficient cause for leaving the hotel, and while it may have deterred persons from going to the hotel, yet it cannot be said that this was such a proximate result of the delivery of an illegitimate child that the defendant was under any obligation to guard against such scandal.

The allegations that the defendant knowingly allowed the body to be hidden and to create odors presents a case of nuisance for which the defendant might be responsible if he knowingly suffered it to continue in rooms hired by him and under his control. While the declaration alleges that the trained nurse was a servant of the defendant to take care of and wait upon his said wife, ordinarily a trained nurse, performing her usual duties with the skill which is the result of training in that profession, does not come within the definition of a servant, but rather is one who renders personal services to an employer in the pursuit of an independent calling. Any liability of the defendant in this case could not rest upon the responsibility of a master for the acts of a servant.

The declaration states that the defendant "knowingly allowed and caused" the body to be hidden in a closet opening out of a hallway. If the defendant were merely passive in suffering a person to conceal the body outside of the rooms under his control, it is doubtful if he would be guilty of an actionable wrong in neglecting the requirement of ordinary decency to inform the plaintiff.

The defendant contends that, upon the allegations of the declaration, the nurse alone caused the plaintiff's injury, and was alone responsible for her actions. This is true unless, as has been said, there was either active participation in the concealment of the body outside of the rooms under the defendant's control, or a failure to remove the body from the rooms under the defendant's control, and suffering it to become offensive, having knowledge of its presence.

The defendant criticises this declaration as an attempt to throw responsibility upon the defendant for acts for which a third person alone was responsible; but, as the case stands on demurrer, effect must be given to the allegations of the declaration as they are framed. It would be manifestly unfair to the defendant to permit the case to go to trial upon the present declaration.

Demurrer sustained on the first and second grounds.